# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | | |
|---|---|---|
| MARTIN ARELLANO GUTIERREZ, | ) | 1:03-CV-06662 LJO JMD (HC) |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| | ) | |
| JAMES A. YATES, Warden, | ) | [Doc #1] |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, Case N. SC083326A.

Following a jury trial, Petitioner was found guilty of manufacturing a controlled substance, possession of methamphetamine for sale, possession of cocaine base for sale, and possession of drug

1 paraphernalia.  Petitioner was also found to have a prior controlled substance conviction and prior

2 prison term, and was sentenced to a term of ten years and eight months in state prison.

3       Petitioner timely appealed to the California Court of Appeal, Fifth Appellate District ("Fifth

4 DCA"), case number F040163, claiming denial of his state and federal constitutional rights to a fair

5 trial and equal protection of the law based on the prosecutor's exercise of peremptory challenges to

6 two African-American prospective jurors.  *See* Exh. A (Petitioner's Opening Brief); Exh. B

7 (People's responsive brief); Exh. C (Petitioner's reply brief).[1]  On May 28, 2003, the Fifth DCA

8 affirmed Petitioner's conviction and sentence.  Exh. D.

9       Petitioner timely petitioned the California Supreme Court for review, case number S117072.

10 Exh. E.  Review was denied without comment on August 13, 2003.  Exh. F.

11       On November 24, 2003, Petitioner filed the instant petition, alleging the same claim of error

12 as was raised before the Fifth DCA.  On March 03, 2003, Respondent filed an Answer to the instant

13 Petition.  On March 30, 2004, Petitioner filed a motion to extend time to file a traverse to

14 Respondent's Answer.  On April 21, 2004, the Court granted Petitioner's motion for enlargement of

15 time.  Petitioner did not thereafter file a traverse.

16 **FACTUAL BACKGROUND**[2]

17       The Court adopts the facts as recited by the Fifth DCA in its opinion dated May 28, 2003:

> On November 8, 2001, Officer Slape of the Delano Police Department came into contact with appellant at the Travel Inn in Delano.  Appellant and Rebecca Lopez were arguing near the open door to room 126.  Officer Slape approached appellant and Ms. Lopez to determine whether or not there was a possible domestic violence situation.  After speaking with both appellant and Ms. Lopez separately, Officer Slape concluded the two were not involved in a domestic violence situation.  However, while conducting his investigation, Officer Slape noted a chemical odor coming from room 126.  Sheriff Sergeant Garza of the special enforcement division, responded to the location and a subsequent search by officers of appellant's and Ms. Lopez's room revealed cocaine hydrochloride, cocaine base, methamphetamine, a gas stove, baking soda and related drug paraphernalia.  The gas stove, baking soda, and water, were being used to convert the cocaine hydrochloride into cocaine base.  Appellant, after his arrest, admitted the drugs found in room 126 were his.

---

[1] All subsequent Exhibit references are to the exhibits attached to Respondent's Answer, unless otherwise noted.

[2] Because the present Petition focuses solely on issues of jury selection, only a brief recitation of the facts is necessary.

cd        2

**DISCUSSION**

I. **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d). Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. **Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C . § 2254(a).

The instant petition is reviewed under the provisions of the AEDPA. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, a petition for habeas corpus will not be granted unless the adjudication in question "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); *see* Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established

1  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
2  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining "clearly established Federal law," the Court looks
3  to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant
4  state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established
5  Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the
6  Supreme Court at the time the state court renders its decision." Id.

7  Finally, this Court must consider whether the state court's decision was "contrary to, or
8  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
9  *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant
10  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on
11  a question of law or if the state court decides a case differently than [the] Court has on a set of
12  materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72.
13  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state
14  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
15  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

16  This Court may not issue the writ simply because in its independent judgment the state court
17  decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that
18  application must also be unreasonable." Id. at 411. A federal habeas court making the
19  "unreasonable application" inquiry should ask whether the state court's application of clearly
20  established federal law was 'objectively unreasonable." Id. at 409.

21  Petitioner has the burden of establishing that the decision of the state court is contrary to or
22  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
23  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,
24  ninth circuit precedent remains relevant persuasive authority in determining whether a state court
25  decision is objectively unreasonable. *See* Duhaime v. DuCharme, 200 F.3d 597, 600-01 (9th cir.
26  1999).

27  AEDPA requires that this court give considerable deference to state court decisions. The
28  state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are

bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

III.  **Review of Petitioner's Claim**

Petitioner claims the trial court erroneously denied defense counsel's motions under People v. Wheeler, 22 Cal.3d 258 (1978).  Petitioner contends the prosecutor used peremptory challenges to systematically exclude the only two African-American jurors on the jury panel (Jurors No. 210170713 and 210164888) in violation of his constitutional rights.  He argues the trial court erred in making a ruling on the prosecutor's race-neutral explanations that did not separately address the reasons for excluding these prospective jurors.

**A.    Factual Background**

During jury selection, defense counsel made a Wheeler motion, stating:

> Because the court indicated my client is dark complected, he is either very, very dark Hispanic or Negro.  And I do note that juror No. 2, Mr. (210170713), was excluded by the DA and the gentleman just excluded, Mr. (210164888), were the only African-Americans that I see in the jury panel.  That along with the fact that one of the other exclusions was Mr. (210143863), a Hispanic, I think that Wheeler should apply in this case.

Aug RT 97.[3]

The trial court did not make a finding regarding whether Petitioner had made a prima facie showing.  It did, however, solicit comment from the prosecutor.  The prosecutor provided the following race-neutral explanations for excluding the jurors in question:

> [The Prosecutor:] [A]s far as articulable reasons for excluding Mr. (210707713) and Mr. (210164888) because of his saying that he had been a holdout, either in the one or two minority, on a previous trial.  And was very vague about the specifics about that.  And that in and of itself, regardless of any ethnicity, would have been a reason I would kick somebody unless there was a good explanation for it in this case.
> As far as Mr. (210170713), Mr. (210170713) through much of the voir dire didn't seem responsive to questions posed to the group.  He did mention having been involved with using cocaine and weed in – or his words, weed, I'm assuming marijuana, in 1995, which was short – relatively short time ago.  And in addition to that, was prosecuted here in Kern County for that.  The proximity in time and the fact that he was prosecuted by our office not that long ago, coupled with his inattentiveness or inability to respond or understand the questions posed to the group were the main reasons I wanted to excuse him.  I also had some concern about his understanding what was going on.  Unless he was being spoken directly to and could interact with the person who was asking the questions, I didn't feel that he was

---

[3] "Aug RT" refers to the Augmented Reporter's Transcript lodged with the Court.

> understanding what was going on on his own, that he needed extra help. And, I think it is important for both the prosecution and the defense that all of the jurors at least be able to understand the proceedings as they are occurring.
> Mr. (210143863), I don't know if that's an issue or not. He is too close to the cousin who was convicted of methamphetamine for purpose of sales. Seemed to close to that situation to me. I had – frankly, I had suspicions that his involvement and his knowledge with methamphetamine and trafficking methamphetamine may have been more extensive than he was letting on based upon the body language and expressions that he made as he was answering questions about that situation.

Aug. RT 98-100.

When given the opportunity to respond to the prosecutor's explanation, defense counsel elected to "submit on my earlier comments." Id. at 100. The trial court then found as follows:

> THE COURT: I think [the prosecutor's] explanation demonstrates adequately in my mind certainly that there was a non-racial basis for excusing each of those jurors. I do agree with you that it – as far as I can recall, I don't believe we have any other African-American people out in the audience. As you know, we have two other Hispanics on the jury at the present time. And I believe, if I recollect correctly, that we have other Hispanic folk in the audience as well. So, with that information I will deny the Wheeler motion.

Id.

**B.     Clearly Settled Supreme Court Law**

Evaluation of allegedly discriminatory peremptory challenges to potential jurors in federal and state trials is governed by the standard established by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 89 (1986).

In Batson, the United States Supreme Court set out a three-step process in the trial court to determine whether a peremptory challenge is race-based in violation of the Equal Protection Clause. Purkett v. Elem, 514 U.S. 765, 767 (1995). First, the defendant must make a *prima facie* showing that the prosecutor has exercised a peremptory challenge on the basis of race. Id. That is, the defendant must demonstrate that the facts and circumstances of the case "raise an inference" that the prosecution has excluded venire members from the petit jury on account of their race. Id.

If a defendant makes this showing, the burden then shifts to the prosecution to provide a race-neutral explanation for its challenge. Id. At this step, "the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991). Finally, the trial court must determine if the defendant has proven purposeful

cd

6

1 discrimination.

### C. Review of Claim by State Courts

This claim was first presented on direct appeal to the Fifth DCA. The Fifth DCA denied the claim on May 28, 2003, in a reasoned opinion. See Exh. D. The claim was then presented to the California Supreme Court in a petition for review; however, the petition was summarily denied on August 13, 2003. See Exh. F. The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Y1st v. Nunnemaker, 501 U.S. 797, 803 (1991).

In reviewing Petitioner's claim, the Fifth DCA found the trial court's rulings to be amply supported by the evidence. Defense counsel raised Wheeler questions about jurors number 210170713, 210164888, and 210143863.[4] With respect to Juror 210170713, the Fifth DCA found that the prosecutor's explanations – the juror's admission of prior cocain and marijuana use involving legal entanglements in Kern County, and his inattentiveness or inability to understand or respond to questions posed to the group – were a "sufficiently neutral" basis on which to exclude a potential juror Exh. D at 7. The appellate court similarly found with respect to Juror No. 210143863 that the prosecutor's stated reasons for exclusion – juror's cousin was convicted of possession of methamphetamine for sale, juror admitted knowledge of how methamphetamine is sold on the street based on discussions with cousin regarding his case, and jurors body language and expression while responding to prosecutor's questions – were adequately race-neutral. Id. With respect to Juror No. 210164888, the Fifth DCA found that the prosecutor's explanation for excusing the juror – that the juror had previously been a holdout on a hung jury, and that he was vague and did not offer a good explanation for having held out – "was both plausible and supported by the record." Exh. D at 8, *citing* People v. Turner, 8 Ca.4th 137, 170 (1994) (previous holdout of juror "constitutes a legitimate concern for the prosecution, which seeks a jury that can reach a unanimous verdict.").

Petitioner asserted that the trial court abdicated its duty to make a determination as to

---

[4] Although the Fifth DCA addressed all three excluded jurors, Petitioner does not in the instant Petition challenge the exclusion of Juror No. 210143863.

1 discriminatory intent by making a ruling which did not "separately address[] the prosecutor's

2 reasons for excluding each of three prospective jurors."  Exh. A at 17-18, *citing* McClain v. Prunty,

3 217 F.3d 1209, 1223 (9th Cir. 2000)..  The Fifth DCA found that under California law, no such

4 further inquiry is required unless the prosecutor's stated reasons are "implausible or suggestive of

5 bias."  Exh. D at 8, citing People v. Silva, 25 Cal.4th at 386.

6      **D.    Analysis**

7      The state court's denial of Petitioner's claim is consistent with Supreme Court precedent.

8 According to Batson, defense counsel must first demonstrate that the facts and circumstances of the

9 case raise an inference that the prosecution excluded the jurors on account of their race.  476 U.S. at

10 89.  Here, because the trial court's denial of Petitioner's Wheeler motion was not predicated on

11 failure to make a *prima facie* showing, but on the prosecutor's race-neutral explanations, the *prima*

12 *facie* inquiry is moot.  Hernandez v. New York, 500 US. 352, 357-359 (1991); Stubbs v. Gomez,

13 189 F.3d 1099, 1105 (9th Cir. 1999).

14      Regardless of whether a *prima facie* case had been established, the appellate court noted

15 several adequate race-neutral explanations for the excusal of Jurors No. 210170713 and

16 210165888.  Juror No. 210170713 stated that "[b]ack in '95 [he] used to mess with" cocaine and

17 marijuana and that he had been in trouble with the law because of drug use and had been arrested in

18 Kern County.  Aug. RT 31-32.  On top of that, the prosecutor noted his belief that Juror No.

19 21070713 appeared inattentive or unable to understand or respond to questions posed to the group

20 of jurors.

21      Juror No. 210164888 indicated that he had been one of two holdout jurors in a previous trial

22 and that he had used marijuana as a teenager.  Id. at 92-95.  The prosecutor indicated that Juror No.

23 210164888 was "very vague" about the specifics regarding his holdout status in a previous trial,

24 and that it was this concern that had led to his use of a peremptory challenge against the juror.

25      The explanations provided by the prosecutor demonstrate that there were ample race-neutral

26 reasons to exclude the jurors in question.  Nor is there anything in the record which provides reason

27 to doubt the sincerity of these explanations.  Petitioner claims that the trial court was required –

28 particularly in the case of Juror No. 210164888 – to question the reasons offered by the prosecutor.

There is no authority supporting such a requirement. Unlike in McClain, the trial court did not "abdicate[] its duty to make an ultimate determination on the issue of discriminatory intent." 217 F.3d at 1223.[5] The trial court made a finding that the prosecutor's explanations adequately demonstrated a non-racial basis for excluding the jurors in question. This Court agrees with the Fifth DCA that the record supports such a finding. Thus the state court rejection of this claim was not contrary to, nor an unreasonable application of, clearly established Federal law. See 28 U.S.C. § 2254(d). The claim should be denied.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)©. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 1, 2007**                         /s/ John M. Dixon
                                                   UNITED STATES MAGISTRATE JUDGE

---

[5] In McClain, in response to defense counsel's objections to prosecutor's allegedly race-neutral reasons for excluding a juror, the trial court stated "I'm not here to second guess [the prosecutor's] reasons." 217 F.3d at 1223.